UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

PACER Cover Sheet
for Electronically Filed Documents

Any data shown here are current as of 06/10/06 . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

| | |
|---|---|
| **Case Title:** | David Lee Dotson |
| **Case Number:** | 04-15441 |

## Document Information

| | |
|---|---|
| **Description:** | Order Denying [50-1] Objection To Claim Objection filed by Debtor David Lee Dotson to Claim of Richard Lovato, John Lovato, Robert Gassman and Kenneth Montiel; Claim Number 11 in the amount of excess of $200,000.00 by David Lee Dotson . |
| **Received on:** | 2005-10-12 09:50:25.000 |
| **Date Filed:** | 2005-10-12 00:00:00.000 |
| **Date Entered On Docket:** | 2005-10-12 00:00:00.000 |

## Filer Information

| | |
|---|---|
| **Submitted By:** | Ellen Snyder |

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

**In re:**

**David L. Dotson,**
**Debtor.**                                        No. 13-04-15441 MA

## ORDER DENYING DEBTOR'S OBJECTION TO CLAIM NO. 11

THIS MATTER is before the Court on the Objection to Claim No. 11 (the "Objection") filed by the Debtor, David L. Dotson ("Dotson") objecting to the joint claim (the "Proofs of Claim" or "Claims") filed by Richard Lovato, John J. Lovato, Robert Gassman and Kenneth A. Montiel (collectively, the "Claimants"). The Claimants assert that Dotson is liable to them for damages, including punitive damages, resulting from an assault by Dotson. Richard Lovato claims total damages in the amount of $100,000.00 of which $80,000.00 is for compensatory damages and $20,000.00 is for punitive damages. John J. Lovato claims total damages in the amount of $100,000.00 of which $80,000.00 is for compensatory damages and $20,000.00 is for punitive damages. Robert Gassman claims total damages in the amount of $55,000.00 of which $40,000.00 is for compensatory damages and $15,000.00 is for punitive damages. Kenneth Montiel claims total damages in the amount of $25,000.00 of which $15,000.00 is for compensatory damages and $10,000.00 is for punitive damages. A hearing on the Objection was held on July 27-28, 2005.

Debtor David L. Dotson ("Dotson") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on July 26, 2004. The Proofs of Claim were filed on November 29, 2004 and were

1

amended on December 27, 2004.[1]

This dispute centers on whether Dotson committed one or more assaults against the Claimants. Based on the evidence and testimony, the Court finds the following:

In early November 2002, the Claimants were on an annual deer hunting trip with family and friends in the Lincoln National Forest, near an area known as "Lone Mountain." Richard Lovato and John J. Lovato are brothers. Robert Gassman is Richard Lovato's son-in-law. Kenneth Montiel is a family friend. Early on the morning of November 8, 2002, the Claimants drove from their camp site in two jeeps to a deer hunting site on the south side of Lone Mountain. John J. Lovato and Robert Gassman drove the first jeep and Richard Lovato and Kenneth Montiel followed them in the second jeep. To reach the south side of Lone Mountain, the Claimants drove through an eighty acre parcel of land owned by Howard Harkey. After exiting the Harkey property on the west side, the Claimants proceeded into what they thought was United States Forest Service land on a narrow unpaved road referred to as the "Loop Road." On the northeast portion of the Loop Road, Richard Lovato noticed that they were being followed by a white pickup truck driven by Dotson. Richard Lovato motioned to the lead jeep to stop, and both jeeps stopped at a location on the northwest section of the Loop Road (the "first confrontation place").

After both jeeps and the pickup stopped, Dotson stepped out of his truck, which was parked about 15 feet behind the second jeep, and approached the jeeps. Richard Lovato, John J. Lovato and Robert Gassman exited the jeeps leaving their hunting rifles behind. The three Claimants stood beside

---

[1] Although the four Claimants files a joint claim, the Court will treat the joint claim as four Proofs of Claim, and ultimately, the Court will allow or disallow each Proof of Claim separately.

the second jeep on the road facing Dotson's truck. Kenneth Montiel remained seated in the second jeep. Dotson asked Richard Lovato for vehicle registration documents and whether he had written permission to cross private property. Richard Lovato asked Dotson what authority he had to ask for vehicle registration documents and informed Dotson that they did not need permission to hunt in this area because they were on Forest Service property and were planning to hunt only on Forest Service property. Dotson stated that they were trespassing on property owned by him.[2] Richard Lovato told Dotson that he was sure that they were on Forest Service land and that they had not crossed private property.[3] Dotson produced a map that showed the boundaries of property he claimed to own. Dotson repeatedly asserted that the jeeps had trespassed across a portion of Dotson's property. Richard Lovato showed Dotson a map in his possession showing the boundaries of Forest Service property. The Claimants maintained that they were not trespassing and that they were going to continue their hunt. A heated argument ensued in which Dotson demanded that the Claimants leave the site and come with him to the sheriff's office. The Claimants refused to leave, stating they did not intend to go anywhere with Dotson and that they intended to continue their hunt. Dotson testified that after the argument, he left the area and contacted the sheriff's office.

According to the Claimants' testimony, after the argument, Dotson turned around, quickly walked to the passenger side of his truck and grabbed a rifle while yelling that the Claimants were

---

[2] The property that Dotson claimed to own was in the form of mining claims owned by corporations in which Dotson had an interest either as an owner or officer. The Court will simply refer to the ownership interests claimed by Dotson as "property interests."

[3] Although the Claimants crossed property owned by Howard Harkey to access the Loop Road, the Claimants testified that they had verbal permission to cross Mr. Harkey's land.

3

"going down" and that they were "going to jail." Dotson fired two quick successive shots at a forty-five degree angle above the Claimants heads, and then swung the rifle down facing the ground. The Claimants testified that the shots shocked and frightened them causing them to fear for their lives and that they also feared being shot when Dotson brought the rifle down at an angle in front of them. Richard Lovato then carefully stepped toward Dotson telling him to put the gun away. Dotson continued to demand that the Claimants come with him to the sheriff's office, and the Claimants stated their refusal again. A few moments later, the Claimants slowly returned to their vehicles and continued west on the Loop Road.

After proceeding about one-half mile west on the Loop Road, the Claimants testified that they arrived at a flat area and parked their jeeps next to each other off of the road. Dotson followed the Claimants to this place (the "second confrontation place"). The Claimants testified that Dotson stopped the truck and spoke loudly on a cellular phone saying that he would "block them in" and that a four wheel drive vehicle was necessary to get up to the site. The Claimants learned later that Dotson was speaking to the Lincoln County sheriff's office. Dotson then drove in a westward direction past the jeeps and out of sight behind a stand of trees. A short time later, the Claimants heard three more shots not far from the second confrontation place. The Claimants ducked in fear that they were being fired at again or that Dotson was either trying to scare away deer or scare them off the site. After a short time, the Claimants split into two groups to hunt: one twosome went toward the west, and the other went up the mountain to the north. At trial, Dotson denied firing any shots either at the first or second confrontation place, and also denied that a second confrontation even occurred.

Sometime later, Dotson drove to the second confrontation place in the white pickup

4

accompanied by Lincoln County sheriff's deputy Robert Shepherd. The deputy testified that while Dotson and he were driving to the Loop Road, Dotson complained that the Claimants had fired their guns at him. However, Dotson had not complained of a shooting in his earlier call to the dispatcher at the sheriff's office. The deputy testified that he saw a 30/06 caliber rifle in the front seat of Dotson's pickup. At the hearing, however, Dotson offered as an exhibit a vintage World War II 303 caliber rifle and testified that this was the gun that he had in the front seat of his pickup.[4]

After Dotson parked at the second confrontation place, the deputy got out of Dotson's truck and waited for the Claimants to walk down from their hunting positions to the parked jeeps where the deputy checked hunting licenses and vehicle registration. After speaking to the Claimants, the deputy decided that the Claimants and Dotson should be escorted from the property and ordered the Claimants to follow Dotson's truck out of the area. The truck and both jeeps started back in the direction of the first confrontation place on the Loop Road. On the way, one of the jeeps had mechanical trouble and stopped. After determining that the jeep could be fixed and then could catch up with the other jeep, the truck and the other jeep continued to the first confrontation place and stopped. Dotson explained to the deputy that this place was located on a mining claim that he owned. The truck and jeep then proceeded south to exit the area through a portion of Harkey's property. The sheriff's

---

[4] Although the parties disagree on what type of gun Dotson had in his truck that day, the Claimants testified that the two shots in quick succession must have come from a semi-automatic rifle. Dotson presented the vintage 303 caliber rifle testifying that it was the one he had with him that day. However, Dotson did not explain whether it was possible for this gun to have fired the successive shots apparently assuming the Court would draw that conclusion. The Claimants offered the deputy's testimony that he saw a 30/06 caliber rifle in the truck, but neither side explained whether this rifle could have fired two successive shots in the manner described by the Claimants.

5

office requested written statements from the Claimants and from Dotson. The Claimants submitted one statement to the sheriff's office signed by all Claimants. Claimants Ex. 103. Dotson also submitted a written statement. Claimant's Ex. 1.

The Claimants testified that they cut their hunting trip short and returned home that day. The Claimants are all avid hunters. Richard Lovato, Robert Gassman, and John J. Lovato testified that even though they have hunted every year since childhood, they have not been hunting since this incident because they fear retaliation by Dotson. Each Claimant testified that they were emotionally affected by these incidents, including the ongoing fear of reprisal. Richard Lovato testified that he will never go back to this hunting area, even though he has hunted there almost every year for the past 20 years. John J. Lovato testified that he fears for himself and his family's safety and is anxious every time a white truck drives by his house. Robert Gassman testified that he fears for his life and for the other Claimants' lives and has wondered since the incidents what would have happened if his wife, who had stayed in camp that day, had been with them. He compared the shocking effect of the incidents to being in a car wreck. Kenneth Montiel testified that since the incident he has carried a gun in this truck for protection. Kenneth Montiel, stated that he never wants to hunt again and will not take his children hunting because he is afraid that a similar incident will occur.

Criminal charges were filed against Dotson and a trial was held in 2004. The jury found Dotson not guilty of aggravated assault with a firearm.[5]

---

[5] In a criminal proceeding, the state must prove that the accused committed the offense beyond a reasonable doubt. *State v. Slade*, 78 N.M. 581, 434 P.2d 700, 702 (N.M.App. 1967)(" It is axiomatic that the burden rests upon the state to prove each and every essential element of the offense charged beyond a reasonable doubt.").

6

Case 04-15441-m13    Doc 92    Filed 10/12/05    Entered 10/12/05 11:58:00    Page 7 of 12

Discussion

When a proof of claim is filed in accordance with the Bankruptcy Rules, it constitutes prima facie evidence of the validity of the claim and amount owed. Rule 3001(f), Fed. R. Bankr. P. However, upon objection to the proof of claim, the burden shifts to the claimant to prove the validity of the claim. *Lundell v. Anchor Const. Specialists, Inc.*, 223 F. 3d 1035, 1039 (9th Cir. 2000). Notwithstanding the well-established burden-shifting scheme outlined above, ultimately "state law governs the substance of claims." *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). In *In re Ogden*, 314 F.3d 1190, 1200 (10th Cir. 2002), the Tenth Circuit Court of Appeals stated,

> [w]hile federal law determines when [a] claim arises for bankruptcy purposes, non-bankruptcy substantive law usually determines the existence of a claim. *See Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) ("The 'basic federal rule' in bankruptcy is that state law governs the substance of claims, . . . Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law")(citation omitted).

Under New Mexico law, the Claimants must show by a preponderance of the evidence that they were the victims of one or more assaults by showing that Dotson acted in such a manner as to cause them to reasonably believe that they were in danger of receiving an immediate battery. *Baca v. Velez*, 114 N.M.13,15, 833 P.2d 1194, 1196 (N.M.App. 1992)(stating definition of assault and burden of proof for civil assault claim).[6] A court may award compensatory and punitive damages for assault. *Downs v. Garay*, 106 N.M. 321, 324, 742 P.2d 533, 536 (N.M. App. 1987).

---

[6] A battery under New Mexico law is an unlawful, harmful, intentional, or offensive touching of another. *Chavez v. Thomas & Betts Corp.*, 396 F.l3d 1088, 1100 (10th Cir. 2005).

7

The Claimants argue that they are entitled to compensatory and punitive damages for assault; however, each Claimant testified that he incurred no out-of-pocket expenses as a result of this experience. The Claimants also ask for punitive damages to punish Dotson and to deter him from further threatening and dangerous behavior. In his Objection Dotson asserts that the Claims should be disallowed because the damages claimed were not caused by "any conduct of the Debtor." Dotson also argues that the damages claimed were exaggerated.

After careful review of all of the evidence and the conflicting testimony, the Court concludes that the Claimants have presented the more credible version of the events of that day and, therefore, have proven by a preponderance of evidence that Dotson assaulted them by threatening them with a rifle and by firing a rifle above their heads.

In his defense, Dotson argues that he was justified in using force to remove the Claimants who were criminally trespassing on his property and refusing to leave. However, even if Claimants were trespassing on Dotson's property, a landowner is only allowed to use the force that is reasonably necessary to remove trespassers. *See Brown v. Martinez*, 68 N.M. 271, 280, 361 P.2d 152, 159 (1961)(finding that landowner who shot and wounded a teenager stealing watermelons from his garden was liable for injuries); *see also Jaramillo v. Smith*, 91 N.M. 378, 380, 574 P.2d 597, 599 (1978)(stating that businessman has right to eject patron who unlawfully remained on premises but only with reasonable force). Dotson did not use reasonable force by threatening Claimants and by firing a rifle over the Claimants' heads in order to force them to leave the area. The Claimants were unarmed and were not physically threatening Dotson. The Claimants simply refused to leave.

Additionally, Dotson argues that the assault was justified because he was acting in self- defense.

8

*See Faubion v. Tucker*, 58 N.M. 303, 306, 270 P.2d 713, 715 (1954)(stating that to "justify an assault and battery on the ground of self-defense, the person assaulted must have done some overt act or made a hostile demonstration of a character to give the assailant reasonable ground to suppose himself in imminent danger."). The Claimants were unarmed, having left their hunting rifles in the jeeps, when they met Dotson at the first confrontation place. They're stated intention during both confrontations was to hunt deer on property that they believed was Forest Service property. The only overt action on the part of the Claimants was their refusal to leave, which Dotson could have remedied through the use of law enforcement, not a rifle. The Court, therefore, concludes that Dotson assaulted the Claimants without justification.

The Claimants ask for compensatory damages; however, they presented no evidence upon which to base an award of compensatory damages having failed to show measurable out-of-pocket expenses as a result of the assault.[7] The Claimants have established a cause of action for assault; therefore, under New Mexico law the Court may award nominal damages. *See Sanchez v. Clayton*, 117 N.M. 761, 768, 877 P.2d 567, 573 (1994)(describing availability of nominal damages awarded for intentional torts as "a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages.")(citation omitted). Because the Claimants established a claim for assault but failed to present evidence of actual compensatory damages, the Court will award each Claimant nominal damages of $10.00.

Claimants also request an award of punitive damages to punish Dotson, to deter further

---

[7] One of the Claimants testified that he lost the money that he invested in the hunting trip; however, no evidence of the amount lost was offered.

9

threatening actions by Dotson and to serve as an example to others who might engage in such dangerous and irresponsible behavior. Under New Mexico law the Court may award punitive damages as punishment or as a deterrent even when the Court does not award compensatory damages. *See Sanchez*, 877 P.2d at 572 (stating that New Mexico courts that award nominal damages may also award punitive damages). In New Mexico punitive damages may be awarded when the conduct of the tortfeasor is maliciously intentional, oppressive, or committed recklessly or with a wanton disregard of plaintiff's rights. *Northrip v. Conner*, 107 N.M. 139, 142, 754 P.2d 516, 519 (1988). Wielding a loaded rifle and discharging it above a person's head at close range is maliciously intentional and oppressive behavior and warrants an award of punitive damages. *See id.* (finding that shooting rifle between plaintiff's feet and throwing a rock at plaintiff warranted punitive damages). Punitive damages against Dotson are also appropriate to deter others from engaging in similar outrageous and irresponsible behavior. *Madrid v. Marquez*, 131 N.M. 132, 134, 33 P.3d 683, 685 (N.M. App. 2001)(stating in case involving claim in equity that punitive damages may be awarded to deter "clearly unacceptable behavior."). In view of the serious and dangerous nature of this assault, the Court concludes that an award of punitive damages is warranted. Thus, the Court finds that Claimants Richard Lovato, John J. Lovato and Robert Gassman who left the relative safety of their jeeps and stood in front of Dotson at the time he fired his rifle into the air over their heads are each entitled to an award of punitive damages in the amount of $3,000.00. Claimant Kenneth Montiel, who was sitting in a somewhat more protected position in the second jeep at the time rifle was fired, is entitled to an award of punitive damages in the amount of $1,500.00.

WHEREFORE IT IS HEREBY ORDERED that Dotson's Objection to Claim No. 11 is

denied.

       IT IS FURTHER ORDERED that the Claim is hereby allowed as follows:

Richard Lovato has an allowed unsecured claim of $10.00 in nominal damages plus $3,000.00 in punitive damages;
John J. Lovato has an allowed unsecured claim of $10.00 in nominal damages plus $3,000.00 in punitive damages;
Robert Gassman has an allowed unsecured claim of $10.00 in nominal damages plus $3,000.00 in punitive damages; and
Kenneth Montiel has an allowed unsecured claim of $10.00 in nominal damages plus $1,500.00 in punitive damages.

_____
MARK B. McFEELEY
UNITED STATES BANKRUPTCY JUDGE

I certify that on the date shown on the attached document verification, a true and correct copy of the foregoing was either electronically transmitted, faxed, delivered or mailed to the listed counsel and/or parties.

Pedro G. Rael
Attorney for Claimants
P.O. Box 460
Los Lunas, NM 87031

Lee Deschamps
Attorney for Debtor
PO Box 37
Socorro, NM 87801-37

Gary B. Ottinger
Attorney for Debtor
PO Box 1782
Albuquerque, NM 87103-1782

_____
Ellen C. Snyder
Law Clerk

11